William Neth v. Commissioner.
Neth v. Commissioner
Docket No. 16938.
United States Tax Court
1949 Tax Ct. Memo LEXIS 295; 8 T.C.M. (CCH) 43; T.C.M. (RIA) 49012; January 13, 1949
*295 Held, petitioner's returns accurately reflected his total income. Henry D. O'Connor, Esq., Widener Bldg., Philadelphia, Pa., for the petitioner. John A. Newton, Esq., for the respondent. VAN FOSSAN Memorandum Findings of Fact and Opinion VAN FOSSAN, Judge: Respondent determined deficiencies for the years 1944 and 1945 in income tax in the respective amounts of $1,774.07 and $988.46 consequent on his determination that petitioner had income in excess of that returned in his tax returns - (a) from bank deposits, (b) the price of certain home furnishings purchased, (c) the price paid for certain property, and (d) the value of certain spoiled merchandise. Petitioner conceded at the hearing the correctness of respondent's determination as to the spoiled merchandise in the amount of $450 for the year 1944. Findings of Fact Petitioner and his wife, Charlotte Neth, came to this country from Germany prior to 1932. Both are now American citizens. Petitioner filed his tax returns with the collector of internal revenue for the first district of Pennsylvania. Soon after his arrival, petitioner became employed as a baker and has continued in that capacity *296 throughout his entire life. From the time of his arrival until 1941, he worked for various concerns on a salary basis. Almost from the time of arrival, petitioner's wife has also been employed in a bakery. Petitioner and his wife lived with extreme frugality. They lived on the earnings of the wife and saved practically all of petitioner's earnings. In 1932 they lost most of their accumulated savings. In that year petitioner took a position originally at $18 per week, from which he advanced to the position of foreman baker $42at a week, which sum he was receiving in 1940. His wife also was employed in a bake shop and they continued to live on her earnings. From 1932 to 1940, petitioner and his wife saved between $10,000 and $11,000, which funds they kept hidden in a closet in their home. In April 1940, petitioner purchased the fixtures of a bakery on Germantown Avenue, Philadelphia, and he and his family moved into quarters above the bake shop at that time. Petitioner's wife operated the bakery alone for nine months after it was purchased, at which time petitioner quit his salaried position and thereafter devoted full time to their bakery. Petitioner did all the baking in the *297 shop and his wife did the selling. Pies, cakes and rolls were the principal items produced. The petitioner paid $1,600 in cash for the fixtures of the bakery acquired in April 1940. He purchased other necessary equipment for the bakery from time to time in 1940 and 1941, paying $955 for a "retarding box." In 1942 petitioner purchased property on Homer Street, paying $1,500 and giving a mortgage for the balance of $2,600. This mortgage was paid off in 1943. In the same year he purchased a property on Magnolia Avenue paying $1,200 cash and giving a mortgage for the balance of $3,000. During the remainder of that year he paid off $400 of the balance. In 1943 petitioner purchased a residence on City Line Avenue for $14,000, paying $5,000 in cash and giving a mortgage for $9,000. The mortgage was paid off in regular monthly payments of $59 or $69 per month until 1946, when the balance was paid off in a lump sum. The City Line Avenue property was rented for a year after it was purchased. In 1944 petitioner purchased furniture for this property in the amount of $3,872.45. After such purchase, petitioner and his family occupied the property part of the time. Petitioner's family, *298 during the taxable years, consisted of himself, his wife and two minor children. Petitioner's bank account at the end of 1943, 1944 and 1945, respectively, showed balances of $306.12; $772.66, and $1,775.87. During the taxable years petitioner had no employees, he personally doing the baking and his wife making all sales. In the conduct of their business petitioner's wife recorded all sales on the cash register at the time the sale was made and, at the end of each week, transferred the total sales for the week to an account book. A separate book was kept for expenditures for merchandise bought and used in operation of the bakery. They followed this method of keeping their accounts from the start of the business in 1940. Taxpayer's books show sales for 1944 in the amount of $16,621.94 and expenditures for merchandise of $10,264.55; other expenses, $100 for labor; $165 for materials and supplies; $64 for taxes, and $1,478.84 for rent and repairs, making a total reported cash expenditure for the bakery for the year 1944 of $12,072.39. Petitioner reported as part of his income for 1944 rent in the amount of $1,710 and cash expenditures in connection with rental property of $555 for *299 repairs and $461.50 for other expenses. He returned as net income for taxation the sum of $3,841.93. In his 1945 return petitioner reported total receipts from the bakery of $13,175.74, against which he reported expenditures of $7,862.92 for merchandise; $40 for taxes and $1,115.36 for repairs, or a total cash expenditure during the year 1945 of $9,018.28. He also reported in 1945, receipts from rent of $1,110, with cash expenditures of $150.70 for repairs and $338.88 for other expenses of rental property. He reported as net income for the year 1945 the sum of $4,195.88. Petitioner made deposits in his bank account during the year 1944 in the total amount of $19,124.12 and during the year 1945 in the total amount of $12,606.65. Deposits of unusual size made in 1944 were in the amounts of $1,800, $3,500, and $2,000, and in 1945 two deposits of $1,200 each. These large deposits represented money taken from their cash savings hidden in their home and deposited for the purpose of paying for property bought. They bore no relation to taxpayer's bakery business of the current year. With the exception of the adjustment for spoiled merchandise, petitioner's returns correctly reflected *300 his income for the taxable years. Opinion Respondent states the issue thus: "Did the books and records of petitioner clearly reflect the net income of petitioner during the calendar years 1944 and 1945?" Petitioner's statement of the issue is "whether or not the petitioner had income in the tax years involved other than that reported in his income tax returns." Petitioner's statement of the issue is the more accurate. Petitioner's books did not purport to cover his investment or rental affairs. Having heard the explanation of both petitioner and his wife of how they lived, worked, saved and invested, being convinced by their demeanor on the stand of the truth of the story as told, and having tested the mathematics of their explanation that the large deposits and expenditures were taken from past savings hidden in their home, we are convinced that petitioner's books were accurate in so far as they went and that the returns filed by petitioner for the taxable years accurately reflected his total income. A gist of the matter is, respondent does not give credence to the testimony of petitioner and his wife. He contends that their story is inherently improbable. Translating his *301 disbelief into assumptions, he thus builds his argument. We cannot agree. We believe the testimony and so believing we find petitioner's explanation reasonable and his contentions sound. Decision will be entered under Rule 50.